
FILED
2011 Mar-30  AM 09:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **LIBERTY MUTUAL FIRE** | ) | |
| **INSURANCE COMPANY, a/s/o** | ) | |
| **VIRGINIA HUNNICUTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 7:09-cv-1702-SLB** |
| | ) | |
| **GEORGE HUNNICUTT; TERRIE** | ) | |
| **HUNNICUTT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendants' Motion for Summary Judgment. (Doc. 17.)[1]  Plaintiff, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), as subrogee of its insured, Virginia Hunnicutt, brought suit to recover benefits paid on Ms. Hunnicutt's claim of total loss of a residential home due to fire.  In its Complaint, plaintiff asserts claims for negligence, and negligence per se, arising from defendants' alleged violation of the Uniform Residential Landlord and Tenant Act ("Landlord Tenant Act"), Ala. Code § 35-9A-301 (1975).  Defendants, George and Terrie Hunnicutt, contend that they are entitled to summary judgment because 1) they are also insureds and not subject to the subrogation interests of Liberty Mutual; and 2) and the Landlord Tenant Act does not support a cause of action under the theory of negligence per se.  Upon

---

[1]  Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that Defendants' Motion for Summary Judgment, (doc. 17), is due to be denied with respect to plaintiff's negligence claim, and granted with respect to plaintiff's negligence per se claim.

## I.  <u>SUMMARY JUDGMENT STANDARD</u>

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue of fact for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("[I]t is never enough simply to state

that the non-moving party cannot meet its burden at trial.").

In deciding a motion for summary judgment, the court's function is not to "weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial." *Anderson*, 477 U.S. at 249. "[C]ourts are required to view the facts and draw

reasonable inferences 'in the light most favorable to the party opposing the [summary

judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v.*

*Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  Nevertheless, the non-moving party

"need not be given the benefit of every inference but only of every reasonable inference."

*Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citing *Brown v.*

*City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)); *see also Scott*, 550 U.S. at

380 ("When opposing parties tell two different stories, one of which is blatantly contradicted

by the record, so that no reasonable jury could believe it, a court should not adopt that

version of the facts for purposes of ruling on a motion for summary judgment.").

## II.  STATEMENT OF FACTS

This is a subrogation action brought by Liberty Mutual to recover for losses related

to property owned by its insured, Virginia Hunnicutt.  On or about July 18, 2007, Liberty

Mutual issued homeowner's policy Number H32-251-196562-408 ("the Policy"), to

Virginia Hunnicutt for a residential home located at 15602 Butler Ridge Road,

3

Cottondale, Alabama, 35453 ("the 15602 property").  (Doc. 18-2 ¶ 2, Virginia Hunnicutt

Aff.; Doc. 18-3, Liberty Mutual Homeowners' Policy.)  Liberty Mutual renewed the

Policy on July 18, 2008.  (Doc. 18-3 p.4.)  On or about August 1, 2008, the 15602

property was totally destroyed by a fire.  (Doc. 18-2 ¶ 5, Virginia Hunnicutt Aff.)

Virginia Hunnicutt submitted a claim for coverage and Liberty Mutual paid her for her

loss and damage pursuant to the terms and conditions of the Policy.  (*Id.* ¶ 6.)

After the fire, Alec Conner, Certified Fire Investigator of AC Fire Investigations,

Inc., conducted an origin and cause investigation.  Mr. Conner examined the fire scene on

August 6, 2008, and opined that the Fire originated in the kitchen on the range, and,

specifically, on a rear burner holding a pan.  (Doc. 31-1 at 2-4.)  Another investigation

was conducted in November 2008 by Forensic Analysis and Engineering Corporation,

which confirmed Mr. Conner's report that the fire damage was more pronounced on the

right rear side of the stove, but concluded that "the remaining debris and components of

both the stove and microwave do not provide any definitive evidence to base a cause

determination as possibly the malfunctioning of either unit."  (Doc. 40 at 13-14, Ex. A.)

Both George and Terrie Hunnicutt testified that Terrie Hunnicutt had a habit of leaving

pots on the right rear burner after using them rather than putting them back in the cabinet

after their use.  (Doc. 35 at 101, George Hunnicutt Depo.; Doc. 36 at 70, Terrie Hunnicutt

Depo.)

4

At the time of the fire, Virginia Hunnicutt's son, George Hunnicutt, and his wife Terrie, along with their daughter, lived at the insured residence.  (Doc. 18-2 ¶ 5, Virginia Hunnicutt Aff.; Doc. 18-5 ¶ 2, Terrie Hunnicutt Aff.)  George and Terrie had lived at the 15602 property uninterrupted since 1994.  (Doc. 35 at pp. 22, 38, George Hunnicutt Depo.)  There was no written rental agreement between Virginia Hunnicutt and defendants George and Terrie Hunnicutt with respect to the insured residence.  (Doc. 18-5 ¶ 6, Terrie Hunnicutt Aff.; Doc. 18-2 ¶ 8, Virginia Hunnicutt Aff.)  George and Terrie Hunnicutt never paid rent to Virginia Hunnicutt; however, they agreed to, and did, make the mortgage, property tax, and insurance payments in exchange for being able to reside at the 15602 property.  (Doc. 18-2 ¶ 9, Virginia Hunnicutt Aff.; Doc. 18-5 ¶ 6, Terrie Hunnicutt Aff.; Doc. 35, pp. 39-42, George Hunnicutt Depo.)  George and Terrie Hunnicutt purchased a separate policy of renters insurance to cover the contents of the 15602 property.  (Doc. 35 at 66, Renters Application; Doc. 36, pp. 29-31, Terrie Hunnicutt Depo.)

Virginia Hunnicutt has not lived in the same house as George and Terrie since they married.  (Doc. 35, pp. 18, 78, George Hunnicutt Depo.)  At the time of the fire, and on and off the previous twenty-plus years, Virginia, along with her husband Allen, lived nearby at 15587 Butler Ridge Road ("the 15587 property").[2]  (Doc. 37, pp.31-33, 52

---

[2]  Virginia and Allen Hunnicutt are George's parents.  (Doc. 35 at 19, George Hunnicutt Depo.)  When the home was refinanced in 2007, it was titled only in the name of Virginia Hunnicutt.  (*Id.* at 48, 50.)

Virginia Hunnicutt Depo. (2010); Doc. 37-1, p. 10, Virginia Hunnicutt Depo. (2008);

Doc. 35, pp. 74-76, George Hunnicutt Depo.)  Virginia did not spend the night at the

home occupied by George and Terrie, but the parties would make social visits to each

other's homes and George uses a shop located on the 15587 property to work on cars.

(Doc. 35, pp. 76-77, George Hunnicutt Depo.; Doc. 36, pp. 34-35, Terrie Hunnicutt

Depo.)  Defendants have never lived at the 15587 Property and they have no intention to

live with Virginia Hunnicutt.  (Doc. 35 at 74-75, George Hunnicutt Depo.; Doc. 36 at 35,

Terrie Hunnicutt Depo.)

### III.  DISCUSSION

In its Complaint, Liberty Mutual alleges that defendants' negligence caused the

fire which destroyed the residence owned by its insured, Virginia Hunnicutt.  Specifically,

the Complaint alleges that the fire erupted in the kitchen and that the defendants had left

the cooking range "on" and unattended.  (Doc. 1 ¶ 10.)  Count One states a claim for

Negligence.  (*Id.* ¶¶ 13-16.)  Count Two states a claim for Negligence Per Se and alleges

that defendants breached the duty of care owed to Liberty Mutual by their failure to

comply with Ala. Code Section 35-9A-301, the Alabama Uniform Residential Landlord

and Tenant Act ("Landlord Tenant Act").  (*Id.* ¶¶ 17-24.)

In their Memorandum and Submission in Support of Defendants' Motion for

Summary Judgment, defendants George and Terrie Hunnicutt assert that they are

"insureds" as defined under the terms of the Policy.  (Doc. 18 at 6.)  Defendants further

argue that "no right of subrogation can arise in favor of the insurer against its own insured, since by definition, subrogation exists only with respect to the rights of the insured against third persons to whom the insurer owes no duty." (*Id.* at 7.) Defendants cite *Moring v. State Farm Mutual Automobile Insurance Company*, which held that an insurer has no right of subrogation against a tortfeasor when the tortfeasor and the insured are covered by the same insurer. 426 So. 2d 810, 812 (Ala. 1982). Because this presents a threshold question, the court will examine whether George and Terrie are insureds of Liberty Mutual, and, thereby, entitled to judgment as a matter of law, before turning to the question of their liability as alleged third-party tortfeasors under the theories of common law negligence and negligence per se.

**a.  Determination of Status of Defendants Under Policy of Insurance at Issue**

There is no dispute that there was a valid and enforceable contract of insurance in place on the date of loss.  The Policy lists Virginia Hunnicutt as the "named insured," (Doc. 31-1 at 3), and states that the terms "you" and "your" in the Policy refer to the "named insured," (*id.* at 7). The Policy issued to Virginia Hunnicutt for the insured residence located at 15602 Butler Ridge Road contains the following definitions:

> 3.     "Insured" means you and residents of your household who are:
>     a.     Your relatives; or
>     b.     Other persons under the age of 21 and in the care of any person named above.
>                 . . .
>
> 4.     "Insured location" means:
>     a.     The "residence premises";

      b.      The part of other premises, other structures and grounds used by you as a residence and:
              (1) Which is shown in the Declarations; or
              (2) Which is acquired by you during the policy period for your use as a residence;
      c.      Any premises used by you in connection with a premises in 4.a. and 4.b. above;
              . . .

8.      "Residence premises" means:
      a.      The one family dwelling, other structures, and grounds; or
      b.      That part of any other building;
where you reside and which is shown as the "residence premises" in the Declarations.

(Doc. 31-1, p. 7.)

George and Terrie contend that because they lived in the insured location at the time of the loss and are relatives of the insured, Virginia Hunnicutt, they qualify as insureds under the terms of the Policy.[3]  (Doc. 18 at 6.)  Liberty Mutual responds that the Policy clearly requires that an insured is a resident of your household, and, therefore, the mere presence of a party in the "residence premises" does not create insured status. (Doc. 31 at 14.)  According to Liberty Mutual, Virginia Hunnicutt's household is at the 15587 property, where she resides.  (*Id.* at 13.)  Liberty Mutual concludes that "to be an insured under the Policy, the Defendants must be Virginia Hunnicutt's relative and a

---

[3]  The court notes that the "residence premises" listed in the Policy Declarations is indicated as the "same as mail address," which, in turn, is "15602 Butler Ridge Road."  (Doc. 31-1 at 3.)  Virginia Hunnicutt testified that, at the time of purchase, she did not tell Liberty Mutual that the 15602 property was going to be her principal address.  (Doc. 37-1 at 23, Virginia Hunnicutt Depo. (2008).)  She stated that the "[insurance company] knew that I was not going to live there . . . [a]nd they told me to [list the residence premises] like that."  (*Id.*)

resident of her household at 15587 Butler Ridge Road, Cottondale, Alabama." (*Id.* at 14.)

The court agrees, to the extent that to qualify as an "insured" the relative must be a part of

the insured's "household."

The Policy does not define the term "household" or the phrase "residents of your

household." Under Alabama Law,

> [w]hen analyzing an insurance policy, a court gives words used in the policy
> their common, everyday meaning and interprets them as a reasonable person
> in the insured's position would have understood them. If, under this standard,
> they are reasonably certain in their meaning, they are not ambiguous as a
> matter of law and the rule of construction in favor of the insured does not
> apply. Only in cases of genuine ambiguity or inconsistency is it proper to
> resort to rules of construction. A policy is not made ambiguous by the fact that
> the parties interpret the policy differently or disagree as to the meaning of a
> written provision in a contract. A court must not rewrite a policy so as to
> include or exclude coverage that was not intended.

*State Farm Mut. Automobile Ins. Co. v. Brown*, 26 So. 3d 1167, 1169 (Ala. 2009)

(internal citations omitted).[4]  Black's Law Dictionary defines "household" as follows: "1.

A family living together. 2. A group of people who dwell under the same roof. Cf.

Family. 3. The contents of a house."  BLACK'S LAW DICTIONARY 808 (9th ed. 2009).  The

court finds this definition to align with the common, everyday meaning of "household."

The term "household," as used in the Policy, is not ambiguous.  Therefore, the

court rejects defendants' argument that the policy "must be construed liberally in favor of

the insured and against the insurer."  (Doc. 40 at 8.); *see also Am. Liberty Ins. Co. v.*

---

[4] The law of the state where the insurance policy is issued controls the interpretation of
the insurance contract. *See Best v. Auto-Owners Ins. Co.*, 540 So. 2d 1381, 1383 (Ala. 1989).

*Carpenter*, 547 So. 2d 402, 403 (Ala. 1989) (reversing lower court's holding that the term "residents of your household" in insurance policy was ambiguous and therefore should be construed against the insurer where the facts showed that the "two couples, although related, have their separate nuclear family units; that they reside in separate homes in Dothan; and that they are residents of separate households."). Likewise, the court disagrees with defendants' contention that "[w]ith no policy definition of the word 'household,' the policy can only refer to 15602 Butler Ridge Road, which renders the Hunnicutts 'insureds.'" (*Id.* at 7.)

Under Alabama Law, "[a] resident of a household is one who is a member of a family who live under the same roof. Residence emphasizes membership in a group rather than an attachment to a building. It is a matter of intention and choice rather than one of geography." *Bayles v. Southern Guar. Ins. Co.*, 484 So. 2d 1065, 1067 (Ala. 1986) (citation omitted); *see also Rice v. State Farm Fire and Cas. Co.*, 628 So. 2d 582, 584 (Ala. 1993) ("The controlling test of whether persons are residents of the same household at a particular time, within the meaning of the policy in question is not *solely* whether they are residing together under one roof. The real test is whether the absence of the party of interest from the household of the alleged insured is intended to be permanent or only temporary–i.e., whether there is physical absence coupled with an intent not to return.") (citation omitted) (emphasis in original). "[T]o be a 'resident' of a named insured's household an individual must be more than a temporary or transient visitor, and

10

must actually live with others in the same household for a period of some duration." *Am. Liberty Ins. Co.*, 547 So. 2d at 403 (quoting *Mathis v. Employer's Fire Ins. Co.*, 399 So. 2d 273, 275 (Ala. 1981)).

In insurance cases involving parents living in one residence and children living in another residence, Alabama courts have analyzed whether the child's residence is merely a temporary "home away from home," in which case the child would still be a "resident" of the parents' household, or whether the child maintains a permanent residence elsewhere and only visits the parent's home infrequently, if ever, in which case the child is not a member of the parent's household. Compare *Crossett v. St. Louis Fire & Marine Ins. Co.*, 269 So. 2d 869, 874 (Ala. 1972) (insured's son who attended university away from home but had room in family home, came home most weekends and kept personal belongings at home except those needed at school and listed parents' address on his driver's license was a "resident of household" of his parents) with *Rice*, 628 So. 2d at 584 (affirming summary judgment for insurer on coverage issue and holding that insured couple's son was not a "resident" of parent's household where son was over the age of 30 and lived in mobile home, owned by his parents, 100 feet from his parent's home for seven years and did not pay rent but paid utility bills on the mobile home and kept no belongings in his parents' home and never spent the night in his parents home).

In this case, there is no dispute that Virginia Hunnicutt did not live with George and Terrie Hunnicutt under the same roof at the time of the fire. Moreover, there is no

11

evidence that Virginia had any intention of living together with George and Terrie or that George and Terrie intended to live under the same roof as Virginia. The undisputed facts compel the conclusion that, at the time of the fire-loss, George and Terrie were not "residents of the insured's household." As in *Rice*, George and Terri Hunnicutt's home, the 15602 property, is owned by the named insured, but George and Terri pay bills on it, sleep there, and have not lived with George's parents for several years. A reasonable jury could not find that George and Terrie's occasional presence in the 15587 property, where Virginia resides, is anything more than that of "a temporary or transient visitor." *Am. Liberty Ins. Co.*, 547 So. 2d at 403. Whether Virginia Hunnicutt "resides" at the 15602 property for purposes of her coverage related to the fire-loss is not a question that is before the court[5] and has no bearing on the court's determination of whether George and Terrie were "residents of the insured's household." (*See* Doc. 40 at 7, 9.)

Accordingly, the court finds that, at the time of the fire, defendants George and Terrie Hunnicutt were not residents of the insured's household and, thus, are not insureds under the Policy. Defendants are not entitled to judgment as a matter of law on the grounds that Liberty Mutual is foreclosed from asserting its subrogation claims against them because they are also insureds under the Policy.

---

[5] *See supra* note 3. The court agrees with defendants' arguments that because Liberty Mutual paid Virginia Hunnicutt's claim of loss, that it, therefore, "concede[s] the premises is an insured location." (*See* Doc. 40 at 9.) However, whether the premises is an "insured location" is a question that is separate and apart from whether the occupants are members of the insured's household.

**b.  Count One – Negligence**

The court notes, as an initial matter, that defendants seek an entry of summary judgment in their favor as to "each and every count" of plaintiff's Complaint.  (Doc. 18, p. 1.)  In their Brief in support of summary judgment, defendants make no argument, independent of that related to subrogation, that they are entitled to judgment as a matter of law on Liberty Mutual's claim of Negligence, asserted in Count One.  Conceivably, under the facts here presented, notwithstanding the court's determination that defendants are subject to suit as alleged third party tortfeasors, defendants could show that summary judgment is proper because no genuine issue of material fact remains as to plaintiff's claim of negligence.  However, the court will not make this argument for them.  "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

Because the court finds that the defendants are not insureds under the provisions of the Policy, and because defendants offered no other argument in support of summary judgment as to plaintiff's negligence claim, summary judgment as to the negligence claim is due to be denied.

**c.  Count Two – Negligence Per Se**

In Count Two of its Complaint, Liberty Mutual asserts, "In failing to comply with Ala. Code (1975) § 35-9A-301 Defendants breached its [sic] duty of care to Plaintiff and

was [sic] accordingly negligent per se." (Doc. 1 ¶ 22.)  In their motion for summary

judgment, defendants contend that Liberty Mutual cannot recover under the  theory of

negligence per se because 1) the Landlord Tenant Act codifies contractual obligations, the

breach of which does not establish negligence per se; 2) the Act is not applicable in the

instant matter because no landlord/tenant relationship existed between Virginia Hunnicutt

and the defendants; and 3) even if the Act applied in this case, "Liberty Mutual has no

standing to bring a cause of action under the Act because the Act was intended to define

the rights between a Landlord and Tenant, not an Insurer and its Insureds."  (Doc. 18, pp.

8-10.)

 The Landlord Tenant Act applies "only to the residential landlord and tenant

relationship."  Ala. Code § 35-9A-102(c). The section governing a tenant's obligation "to

maintain dwelling unit" states in relevant part:

> A tenant shall:
>
> . . .
> (5) use in a reasonable manner all electrical, plumbing, sanitary, heating,
> ventilating, air-conditioning, and other facilities and appliances including
> elevators in the premises;
>
> (6) not deliberately or negligently destroy, deface, damage, impair, or remove
> any part of the premises; or knowingly, recklessly, or negligently permit any
> person to do so. . .

Ala. Code § 35-9A-301.

 Under Alabama law, to recover under the theory of negligence per se, the plaintiff

must prove:

1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged;

2) that the plaintiff's injury was the kind of injury contemplated by the statute;

3) that the defendant violated the statute; and

4) that the defendant's violation of the statute proximately caused the plaintiff's injury.

*Dickinson v. Land Developers Const. Co., Inc.*, 882 So. 2d 291, 302 (Ala. 2003).

Defendants first point out that "no cases have been decided in either the Federal or State courts of Alabama" under the relatively new Landlord Tenant Act, which became effective January 1, 2007.  (Doc. 18 at 8.)  Since defendants filed its brief in support of summary judgment, a few cases have been decided under Alabama's Landlord Tenant Act, but none have analyzed the provisions at issue here or the question of negligence of per se. *See Ex parte Maiers*, ___ So. 3d ___, 2010 WL 3290986, at * (Ala. 2010) (discussing whether a landlord and tenant relationship existed so as to trigger application of the Alabama Uniform Residential Landlord Tenant Act); *Robinson v. Sovran Acquisition Ltd. Partnership*, ___ So. 3d ___, 2011 WL 480032, at *2 (Ala. Civ. App. Feb. 11, 2011) (discussing the impact of the Alabama Uniform Residential Landlord Tenant Act on exculpatory clauses in residential leases).  Defendants point out that Mississippi, Florida, and Tennessee have had similar statutes in place for "many years," and rely on persuasive caselaw from those states to support their claim that the Alabama Landlord Tenant Act does not give rise to a negligence per se claim.  (Doc. 18, pp. 8-9

15

[citing *Paterson v. Deeb*, 472 So. 2d 1210 (Fla. Dist. Ct. App. 1985); *Sweatt v. Murphy*, 733 So. 2d 207 (Miss. 1999).]

In *Sweatt v. Murphy*, the Mississippi Supreme Court rejected plaintiff's argument that the defendants "should be held negligent *per se* for all violations of the Housing Code 'materially affecting health and safety.'" *Sweatt,* 733 So. 2d at 209.  The court stated, "This Court has never interpreted the RLTA [Mississippi Residential Landlord and Tenant Act] as constituting a basis for holding a landlord negligent *per se* for all housing code violations, and such an interpretation of the RLTA would lead to inequitable and extreme results."  *Id.*

In *Paterson v. Deeb*, the District Court of Appeal of Florida expressed a similar view in analyzing Florida's Residential Landlord and Tenant Act, although it did not reach the issue of negligence per se.  The *Paterson* court considered whether a breach of the landlord's statutory duty to provide locks and maintain common areas in a safe condition may constitute the legal cause of the plaintiff's personal injuries sustained in an attack by an unauthorized intruder.  472 So. 2d at 1217.  The court acknowledged that "[a] respectable body of developing law has allowed recovery of damages for personal injuries caused by the breach of this implied warranty."  *Id.*  at 1220 (citations omitted).  The court also noted that "[a] landlord's violation of the act is at least evidence of negligence."  *Id.* at 1217.  However, the court rejected the plaintiff's argument that the statutory violation constitutes negligence per se, expressing in dicta that "[w]e do not

16

consider this section to be a 'strict liability statute' in the sense that it protects a particular class of persons from their inability to protect themselves; nor is it a *penal* statute designed to protect a particular class of persons from a particular injury or type of injury. . ." *Id.* at 1217 n.5 (internal citations omitted) (relying upon the negligence per se test announced in *De Jesus v. Seaboard Coastline R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973)).[6]

The court adopts the views expressed in *Paterson* and *Sweatt* and holds that the Landlord Tenant Act does not give rise to liability under the theory of negligence per se. The court rejects Liberty Mutual's argument that these cases are inapplicable because the courts addressed obligations of a landlord to a tenant as opposed to the protections afforded a landlord from destruction of his property by a tenant.  (*See* Doc. 31, pp. 22-23.)

Liberty Mutual argues that the cause of action for negligence per se is recognized under Alabama law and that all of the elements for establishing a cause of action under negligence per se are met here.  Without deciding the issue, the court notes that Liberty Mutual provides no evidence to support its claim that Virginia Hunnicutt is a landlord, (Doc. 31 at 21), and it is undisputed that there is no rental agreement in place between Virginia Hunnicutt and Terrie and George Hunnicutt.

Moreover, to prove that defendants are liable for negligence per se, Liberty Mutual is required to prove that defendants "violated the statute."  *See Dickinson*, 882 So. 2d at 302.  The provision of the Landlord Tenant Act at issue, § 35-9A-301, imposes an

---

[6] The court notes that Alabama and Florida require similar proof of negligence per se.

17

obligation on the tenant(s) to "use in a *reasonable* manner" all facilities and appliances on the premises and to "not deliberately or *negligently*" destroy or damage the premises, or "knowingly, recklessly, or *negligently* permit any person to do so."  Ala. Code § 35-9A-301(5)-(6) (emphasis added).  Therefore, as an element of its negligence per se claim, Liberty Mutual has to prove that the defendants acted at least negligently, which they have not proven at this stage.  Liberty Mutual argues that "[i]t is undisputed that the 15602 Property was destroyed by fire. . . It is Plaintiff's contention that the Defendants['] negligence caused the Fire by failing to use the requisite standard of care . . . As negligent destruction of the 15602 Property by fire constitutes destruction of a part of the dwelling, the Fire is the type of injury contemplated by the statute."  (Doc. 31 at 21-22.)  The only evidence provided by Liberty Mutual as to defendants' negligence is Terrie Hunnicutt's habit of leaving pans on top of the range after their use, (Doc. 35 at 101, George Hunnicutt Depo.; Doc. 36 at 70, Terrie Hunnicutt Depo.), and a report stating that the fire originated on one of the burners, (Doc. 31-2).  This evidence falls far short of establishing the elements of a negligence action, particularly with respect to causation.

Generally, when asserting negligence per se, the statutory violation at issue is characterized by a specific defined action, such as failing to provide a report or failing to stop at a stop sign.  *See, e.g.*, *Elder v. E.I. DuPont De Nemours and Co., Inc.*, 479 So. 2d 1243, 1248 (Ala. 1985); *Gilbert v. Gwin-McCollum Funeral Home, Inc.*, 106 So. 2d 646, 651 (Ala. 1958).  The violation of the statute is then used to demonstrate the breach of a

18

duty owed to plaintiff.  However, the violation of the statute is not enough to establish actionable negligence. *Gilbert*, 106 So. 2d at 651 ("It is true that violation of the city ordinance is per se negligence, but this does not necessarily constitute actionable negligence.  Unless there is the breach of a duty owing, there is no actionable negligence, though there be negligence.") (citations and internal quotations omitted).  Here, because a violation of the Landlord Tenant Act provision is proven by demonstrating the tenant's negligence, Liberty Mutual cannot establish negligence per se without also providing evidence to support the negligence claim itself.[7]

For these reasons, the court finds that defendants' Motion for Summary Judgment, (doc. 17), as to Count Two, Negligence Per Se, is due to be granted.  Accordingly, the court does not reach the issue of whether a landlord/tenant relationship was established between Virginia Hunnicutt and defendants George and Terrie Hunnicutt.

---

[7] The court rejects plaintiff's contention, offered at oral argument on its Motion, that its burden of proof under the theory of negligence per se would be lighter, given that proof of the statutory violation would require a jury determination of, for example, defendants' failure to maintain appliances as opposed to expert testimony related to cause and origin.  Without reaching that issue, the court notes that in this case, under either theory – negligence or negligence per se – the required element of causation necessitates expert testimony.  *See Hollis v. Brock*, 547 So. 2d 872 (Ala. 1989) (affirming summary judgment on claims that defendants negligently caused a fire where plaintiffs failed to provide expert testimony in support of their allegation that faulty wiring caused the fire).

## IV.  CONCLUSION

For the foregoing reasons, the court finds that defendants' Motion for Summary Judgment, (doc. 17), is due be denied with respect to plaintiff's negligence claim, Count One, and is due to be granted as to its negligence per se claim, Count Two.  An Order granting in part and denying in part defendants' Motion will be entered contemporaneously with this Memorandum Opinion.

**DONE,** this 29th day of March, 2011.


_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE